1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   United States of America,              )    No. CR 03-734 PHX-ROS
                                           )        CV 04-2037 PHX-ROS (LOA)
10            Plaintiff/Respondent,         )
                                           )
11  vs.                                     )    **AMENDED**
                                           )    **REPORT AND RECOMMENDATION**
12  Alvaro Reyes-Ramirez                    )
                                           )
13            Defendant/Movant.             )
                                           )
14  _____)

15            This matter arises on Movant's Motion to Vacate, Set Aside or Correct Sentence

16  pursuant to § 28 U.S.C. § 2255.  (document # 19)  Respondent has filed an Amended Answer[1]

17  (document # 29) to which Movant has replied (document # 30).  Thereafter, the Court ordered

18  Respondent to file a copy of the transcript of Movant's 1995 removal proceedings and to submit

19  supplemental briefing regarding Movant's claim that the removal proceedings violated his due

20  process rights.  (document # 32) Respondent requested additional time in which to comply with

21  the Court's order which the Court granted.   On August 31, 2005, Respondent submitted

22  supplemental briefing in which it advised the Court that it has been unable to obtain either a

23  recording or transcript of Movant's 1995 deportation proceedings despite having made

24  numerous attempts to do so.  The Court determined that it could resolve Movant's § 2255

25

26  _____

27            [1] On December 8, 2004, Respondent filed a Response in Opposition to Movant's § 2255 Motion.
    (document # 26) Thereafter, Respondent moved to filed an Amended Response.  (document # 27) The
28  Court granted Movant's motion (document # 28) and on January 5, 2005, Respondent filed its Amended
    Response.  (document # 29)

1   Motion in the absence of the transcript (document # 43) and stated that any issues raised by the

2   lack of transcript would be resolved in Movant's favor.  Thereafter, on September 14, 2005, the

3   Court issued a Report and Recommendation recommending that Movant's § 2255 Motion be

4   denied.  (document # 43) At that time, the Court was unaware that Respondent had filed a

5   Notice of Receipt of Deportation Hearing Recording (document # 42) in which Respondent

6   advises the Court that it has received and reviewed a recording of Movant's March 13, 1995

7   deportation hearing.  Respondent informs the Court that the recording reveals that Movant was

8   advised of and declined his right to seek waiver of deportation.  (document # 42) In view of the

9   location of the recording of Movant's 1995 deportation hearing, the Court issues this amended

10  Report and Recommendation and vacates the September 14, 2005 Report and Recommendation.

11

12                                    **BACKGROUND**

13           On December 23, 1993, Movant was convicted in the Superior Court of California,

14  Riverside County, of possession of heroin for sale.  (Respondents' Exh. F) Based on the

15  conviction, he was ordered deported and was deported to Mexico on March 29, 1995.

16  (Respondents' Exh. F, G, H) Movant reentered the United States illegally in 1998 which resulted

17  in the reinstatement of his 1995 deportation.  (document # 29, Exh. I) Thereafter, on May 27,

18  2003, Movant again entered the United States illegally and was arrested for re-entry after

19  deportation.  (document # 1) Movant was charged with re-entry after deportation in violation

20  of 8 U.S.C. § 1326(a), enhanced by § 1326(b)(2) on the basis of Movant's prior aggravated

21  felony conviction for possession of a controlled substance.  On July 8, 2003, Movant and the

22  government executed a written plea agreement pursuant to which Movant waived his right to

23  indictment and pled guilty to the foregoing charge by way of an information. (Respondents'

24  Exh. A at  5, 6)    The plea agreement provided for a three-level downward adjustment to

25  Movant's base offense level for acceptance of responsibility, and a four-level downward

26  departure based upon savings to the government.  (Respondents' Exh. A at 2-3) Based on

27  Movant's criminal history, which included a conviction for drug-trafficking that qualified

28  Movant for an adjusted offense level of 24, the pre-sentence report assigned Movant an adjusted

offense level of 24.   (Respondents' Exh. B at 5) The pre-sentence report also calculated Movant's criminal history as Category IV.  (Respondents' Exh. B at 9) In accordance with the plea agreement, the court subtracted three levels for acceptance of responsibility and four levels for savings to the government, and assigned Movant a final offense level of 17.  (Respondents' Exh. E at 13) On September 29, 2003, the court sentenced Movant to a 37-month term of imprisonment, the low end of the guideline range.  (Respondents' Exh. C; document # 18)

Thereafter, Movant filed the pending § 2255 Motion raising the following claims: (1) counsel rendered ineffective assistance because Movant was unable to communicate with him; (2) the sixteen-level sentencing enhancement violated his Sixth Amendment rights articulated in Blakely v. Washington, 124 S.Ct. 2531 (2004); and (3) his underlying deportation was illegal because he was deprived of due process during the deportation proceedings and, therefore, his underlying deportation and removal order cannot be used as an element of the crime of conviction.

**ANALYSIS**

**I. Ineffective Assistance of Counsel**

In his first claim for relief, Movant argues that counsel rendered ineffective assistance because Movant was unable to communicate with him.  Movant explains that he does not speak English and has only a third grade education from a school in a small village in Mexico and claims that the interpreter used a higher level of Spanish than that to which Movant is accustomed.   Movant further claims that he did not understand the proceedings and his potential sentence.  (document # 30 at 3)

To establish ineffective assistance of counsel, Movant must establish that  (1) counsel's representation fell below an objective standard of reasonableness; and (2) he was prejudiced thereby.  Hill v. Lockhart, 474 U.S. 52 (1985)(citing Strickland v. Washington, 466 U.S.  668, 688-692 (1984)).  To establish prejudice, movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  Where movant cannot  establish prejudice, the court need not reach the performance prong.  Strickland, 466 U.S. at 697; Williams v. Calderon,

52 F. 3d 1465, 1470 (9th Cir. 1995).  In reviewing counsel's performance, a court must "strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Strickland, 466 U.S. at 689.

Where a movant has entered a guilty plea, to establish prejudice, he must establish a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty." Hill, 474 US. at 59.  Mindful of these principles, the Court will consider Movant's claims of ineffective assistance.

Movant argues that because he does not speak English, he was unable to communicate with counsel.  He also argues the because he only has a third-grade education from a school in rural Mexico, he could not understand the court proceedings and has difficulty understanding even Spanish.  (document # 30 at 4)   As examples of his failure to understand the interpreter and the proceedings, Movant cites several portions of the transcript of the change of plea hearing where he gave non-responsive or incorrect answers to the Judge's questions. First, Movant refers to an exchange with the judge where Movant responded affirmatively when asked if he had entered the United States illegally to visit his daughter.  (July 8, 2003 Change of Plea Transcript, pg. 53, lines 3-8) Movant claims that his response was incorrect because he had crossed the border illegally with his daughter in the car.  Thus, he could not have been coming to visit his daughter, she was already with him.  However, this one example does not alone indicate that Movant did not understand the proceedings. Movant cites the following other passages of the change of plea transcript as examples of his lack of understanding of the proceedings:

**(1) Page 5, Line 16**

First, when asked whether he wished to plead guilty, Movant responded, "Well, I already signed so . . . ." (Respondents' Exh. D at 5) When the court again  asked if he wished to plead guilty, Movant responded, "If they think I am guilty, well, oh well." (Id.)  The court then informed Movant a second time that he had the right to plead guilty, but was not required to do so.  (Id. at 5-6) Movant informed the court that he understood his rights and that he wished

to plead guilty. (Id.)  Nothing in this exchange between Movant and the Court supports a claim that Movant did not understand the proceedings.

### (2) Page 7, Line 13

Movant next cites line 13 on page 7.   To put Movant's response in context, the court will consider the exchange between Movant and the court on lines 7 - 18.

> Court: In a few moments I am going to ask . . . you what you did, to determine if there are facts to support a plea of guilty, and you will be required to give up your constitutional right to remain silent, and tell me what you did wrong. do you understand that, Mr. Reyes?
>
> Movant: For me to tell you if I'm guilty or what?  Well, I thought about this, that I am guilty.
>
> Court: Mr. Reyes, the question was do you understand what I told you?
>
> Movant: Yes

The court then reiterated that by pleading guilty, Movant would forego his right to remain silent.  Movant advised the court that he understood that he would be forfeiting that right.  (Respondents' Exh. D at 7; Tr. at pg 7 line 7 - pg. 8 line 3)   Although Movant's initial response indicates that he did not understand the court's question, after clarification, he did and provided a responsive answer.  The Court notes that the manner in which the question was phrased initially was unclear which suggests that Movant's confusion may have stemmed from the phrasing of the question itself and not the manner of interpretation.

### (3) Page 9 Line 2 -3 and 6-7

Movant next cites the following exchange regarding his age and education as evidence that he did not understand the interpreter.

> Court:  How old are you?
>
> Movant: Forty-nine.
>
> Court: *And how much education —*
>
> Movant: *I was born in '53.*
>
> Court: How much education have you had?
>
> Movant: The third grade.
>
> *Court: Where did you attend school?*

*Movant: In Mexico, and here in California.*

(Respondents' Exh. D at 9)  Movant claims that his responses regarding his age and education indicate that he did not understand the interpreter.  The transcript shows that Movant understood the question regarding his education but interrupted the court before it had completed the question to provide more detail regarding his age.  When asked where he had attended school, Movant responded that he had attended school in Mexico and in California.  In his pending § 2255 motion, Movant states that he was educated only in Mexico and his response during the change of plea hearing indicates that he did not understand the proceedings.  Although it appears that Movant may have been confused regarding the education question, this incident does not support Movant's claim that he did not understand the proceedings in their entirety.

**(4) Page 9, Line 19**

Movant next challenges a statement he made regarding his ability to speak English.  He advised the court that he could speak a little English but cannot read or write it.  (Respondents' Exh. D at 9) Movant does not explain how this statement supports his claim that he could not understand the proceedings.

**(5) Page 10, Lines 9-13**

Lines 9-16 of page 10 of the change of plea hearing transcript contain an exchange between Movant and the court regarding Movant's use of drugs, alcohol and medication.  (Respondents' Exh. D at 10)  When asked whether he had used any drugs, alcohol, or medication within the past 48 hours, Movant responded that he "never did drugs" and drank beer "many years ago."  (Respondents' Exh. D at 10; Tr. pg. 10, lines 9-13)   Because it appeared that Movant did not understand the question, the court clarified that it meant within the past 48 hours.  (Id. at lines 14-21) Movant responded that he had not used drugs, alcohol, or medication during the past 48 hours. (Id.)

**(5) Page 11, lines 2-7**

Movant next cites a portion of the transcript where he informed the court about his past heart surgery and heart condition for which he still takes medication.  (Respondents' Exh.

D at 11) Movant then expanded on the information regarding his heart surgery and told the court about an incident when he was arrested, shortly after his surgery, and allegedly abused by a police officer.  While Movant appears to have provided more information than the court was seeking, this passage of the transcript does not support a conclusion that Movant did not understand the interpreter.

### (6) Page 12, lines 22-25

Finally, Movant refers to an exchange regarding his heart medication. (Respondents' Exh. D at 12) When asked whether the medication impaired his ability to think and concentrate, Movant informed the Court that he suffers from back pain and stated that his pain does not interfere with his concentration.  Movant appears to have understood the essence of the Court's question - whether his ability to concentrate was impaired by pain or medication - and ultimately provided a responsive answer.

After review of the transcript of the change of plea hearing, including the passages which Movant highlights, the Court finds that Movant was able to effectively communicate with counsel and that he understood the interpreter.  During the change of plea hearing, the court asked, "do you read, speak, and understand English?"  (Respondents' Exh. E at 9) Movant responded that he understands English, can speak "a little bit" of English, but cannot read or write in English.  (Id.)  The Court then asked Movant if he understood everything that his lawyer had told him through an interpreter. Movant replied that he understood everything counsel had told him. (Respondents' Exh. D at 9-10) The court also asked Movant if he had had "enough time to fully and completely discuss [his] case" with counsel and whether he was satisfied with counsel's representation.  (Id. at 16) Movant responded affirmatively to the both questions.  (Id.)  During Movant's sentencing hearing, the court asked Movant if he understood what was being interpreted to him and Movant responded that he did.  (Respondents' Exh. E at 8)   Movant also advised the court that he speaks some English.  (Id.)   The court advised Movant to ask the court if he had any questions and Movant responded that he would do so. (Id.)

1    When Movant's answers to the court's questions were non-responsive, the court

2    sought further clarification from Movant.  Movant's initial misunderstanding of some of the

3    court's questions does not establish that Movant was unable to understand the interpreter, the

4    proceedings, or counsel.  At best, Movant has shown that a few times he was confused by the

5    court's questions regarding his age, education, use of medication and drugs, and whether his

6    medication or pain impacted his ability to concentrate.  In all of these instances, the court sought

7    and received clarification from Movant.  The record indicates that although Movant may have

8    initially been confused by some of the court's phrasing of questions, he ultimately understood

9    the questions, as interpreted by the interpreter, and provided responsive answers.  The record

10   also reveals that Movant speaks and understands some English and that he understood the

11   interpreter.  There is no evidence indicating that Movant complained about the interpreter at any

12   time during the change of plea or sentencing proceedings.  In addition, Movant never advised

13   the court or counsel that he was confused or did not understand the proceedings or the terms of

14   his guilty plea.  See, Razavi v. Olivarez, 1995 WL 16845 (N.D.Cal. 1995)(denying petitioner's

15   claim that his inability to speak English resulted in ineffective assistance of counsel where

16   record contained no evidence that petitioner had complained about interpreter or expressed that

17   he did not understand the proceedings.)

18   Movant claims that counsel was ineffective because Movant could not communicate

19   with counsel.  Movant has not offered any evidence in support of his claim.  Additionally,

20   Movant has not explained how the alleged lack of communication caused counsel's performance

21   to be deficient or prejudiced his case.  Movant also advised the court that he was satisfied with

22   counsel's representation.  (Id. at 12-13)

23   In view of the foregoing, Movant's claim that trial counsel was ineffective because

24   of Movant's inability to speak English fails.

25   **II. Blakely Challenge to Sentencing Enhancement**

26   Movant next argues that his sentencing enhancement violates the Sixth Amendment

27   in view of the ruling in Apprendi v. New Jersey, 530 U.S. 466 (2000) as extended in Blakely

28   v. Washington, 124 S.Ct. 2531 (2004).  Movant's claim fails.  Recognizing that this claim lacks

merit, in his Reply, Movant withdrew his <u>Blakely</u> claim.  (document # 30 at 5) Accordingly, the court need not address this claim.  In the event that Movant retracts his withdrawal of this claim after the undersigned issues this Report and Recommendation, the Court will address the merits of this claim to provide a complete record for the District Judge.

In <u>Apprendi</u>, the Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  <u>Apprendi</u>, 530 U.S. 466. Thereafter, in <u>Blakely</u>, the Supreme Court extended the rule of <u>Apprendi</u> to judicial fact-finding in the sentencing phase.  Here, Movant argues that his sentence violates <u>Blakely</u> because his prior conviction, which formed the basis of a sentencing enhancement, was not found beyond a reasonable doubt by a jury.  <u>Blakely</u> was decided after Movant's conviction became final, therefore, the Court must determine whether <u>Blakely</u> applies retroactively to Movant's case on collateral review.

In <u>Teague v. Lane</u>, 489 U.S. 288, 310 (1989), the Supreme Court held that "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."  <u>Id.</u> at 310.  A case announces a new rule "if the result was not dictated by precedent existing at the time the defendant's conviction became final."  <u>Id.</u>

Two exceptions exist to <u>Teague</u>'s prohibition against the application of "new rules" of criminal procedure to cases in which the conviction has already become final.  First, a new rule applies retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authorities to proscribe."  <u>Teague</u>, 489 U.S. at 311.  Second, a new rule of criminal procedure applies retroactively if it constitutes a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding."  <u>Saffle v. Parks</u>, 494 U.S. 484, 495 (1990).  The Supreme Court has noted that "[t]his class of rules is extremely narrow."  <u>Schriro v. Summerlin</u>, 124 S.Ct. 2519, 2523 (2004).

1    Teague applies only to procedural rules, and not to substantive rules deciding the
2    meaning or scope of a criminal statute. Bousley, 523 U.S. at 620.  A rule is substantive rather
3    than procedural if "it alters the range of conduct or the class of persons that the law punishes."
4    Summerlin, 124 S.Ct. at 2523.  By contrast, "rules that regulate only the manner of determining
5    the defendant's culpability are procedural."  Id.  Thus, when a defendant seeks to benefit from
6    a judicial opinion issued after a defendant's conviction, the court must first determine whether
7    the opinion announces a new rule of criminal procedure or whether the rule is substantive.  Id.
8    If the court determines that the rule is procedural, then the court conducts a three-step Teague
9    analysis.  See, Beard v. Banks, 124 S.Ct. 2504, 2511 (2004).  First, the court  determines the
10   date on which the defendant's conviction became final.  Beard, 124 S.Ct. at 2510.  Second, the
11   court must "survey the legal landscape as it then existed" and determine whether the court
12   considering the defendant's claim at the time the conviction became final "would have felt
13   compelled by the existing precedent to conclude that the rule [he] seeks was required by the
14   Constitution."  Caspari v.  Bohlen, 510 U.S. 383, 390 (1994).  Finally, the court must decide
15   whether the rule which the defendant seeks to invoke falls within "one of the two narrow
16   exceptions to the nonretroactivity principle."  Id.

## 2. **Teague** Analysis of **Blakely**

18       The Court will apply Teague to determine whether Blakely applies retroactively to
19   this case on collateral review.  Blakely was an expansion of the rule announced in Apprendi
20   that "other than the fact of a prior conviction, any fact that increases the penalty for a crime
21   beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a
22   reasonable doubt." In Ring v. Arizona, 536 US. 584, 592-93 (2002), the Supreme Court applied
23   the rule announced in Apprendi to require that a jury, rather than a judge, determine the
24   existence of any aggravating factor required to authorize the imposition of the death penalty
25   under the relevant state sentencing scheme.

26       Thereafter, in Blakely, the Supreme Court extended the rule announced in Apprendi
27   and Ring to invalidate an upward departure under the Washington state sentencing guidelines
28   that was imposed on the basis of facts found by the judge at sentencing, even though the

1  sentence was lower than that statutory maximum for the crime.  The Court held that the sentence

2  violated the Sixth Amendment because the sentence was imposed based on facts that were

3  "neither admitted by [the defendant] nor found by a jury."  Blakely, 124 S.Ct. at 2531.

4          The Supreme Court has held that its decision in Ring, Blakely's predecessor, was

5  "properly classified as procedural."  Summerlin, 124 S.Ct. at 2523.  Similar to the holding in

6  Ring, the holding in Blakely did not alter the range of conduct made criminal by Washington

7  law, and "rested entirely on the Sixth Amendment's jury-trial guarantee, a provision that has

8  nothing to do with the range of conduct a State may criminalize."  Id.  Instead, Blakely and

9  Ring, "altered the range of permissible methods for determining [a defendant's punishment],

10  requiring that a jury rather than a judge find the essential facts bearing on punishment."  Id.  As

11  the Court stated in Summerlin, "[r]ules that allocate decisionmaking authority in this fashion

12  are prototypical procedural rules . . . ."  Id.  Further, all of the courts of appeals to address the

13  issue have held that Apprendi, the progenitor of both Ring and Blakely, announced a rule of

14  criminal procedure, not a substantive rule.  See, United States v. Swinton, 333 F.3d 481, 488-89

15  (3d Cir. 2003)(citing cases).  Thus, Blakely, like Ring and Apprendi, announced a rule of

16  criminal procedure.

17          **1.  Whether Blakely announced a *New* Rule of Criminal Procedure**

18          Having determined that Blakely announced a procedural rule, the Court must

19  determine whether Blakely announced a "new" rule of criminal procedure.  To make that

20  determination, the court must: (1) ascertain when Movant's conviction became final, and (2)

21  review the legal landscape existing at the time Movant's conviction became final and decide

22  whether the rule Movant seeks "was dictated by then-existing precedent."  Beard, 124 S.Ct. at

23  2511.

24          Movant's conviction became final in October of 2003, when the time for filing his

25  appeal expired.  Clay v. United States, 537 U.S. 2004 (conviction becomes final when Supreme

26  Court "affirms a conviction on the merits on direct review or denies a petition for writ of

27  certiorari, or when the time for filing a certiorari petition expires.")  Thus, the Court must survey

28

1  the legal landscape as of October 2003 to determine whether the holding in <u>Blakely</u> was dictated

2  by the precedent existing at the time.

3           A review of the legal landscape as of October 2003demonstrates that a district court

4  judge was not prohibited by the then-existing precedent, from determining facts that increased

5  the available sentence under the Sentencing Guidelines without exceeding the statutory

6  maximum  sentence.  All federal appellate courts to consider this issue after <u>Apprendi</u> was

7  decided but before the Supreme Court issued its decision in <u>Blakely</u>, upheld the application of

8  the Sentencing Guidelines against <u>Apprendi</u> challenges. See, <u>United States v. Kelly</u>, 2005 WL

9  1801668, * 2 (D.Or., July 21, 2005)(stating that before <u>Blakely</u>, every federal court of appeals

10  had held that <u>Apprendi</u> was not applicable to Guidelines calculations made within the statutory

11  maximum); <u>United States v. Samuel</u>, 296 F.3d 1169, 1172 (D.C.Cir. 2002)(stating that "[t]his

12  court and the other courts of appeals have held that <u>Apprendi</u>'s rule does not apply to offense

13  characteristics that enhance a defendant's sentence under the Sentencing Guidelines, but that do

14  not increase the sentence above the statutory maximum for the offense of conviction."); <u>United

15  States v. Fields</u>, 251 F.3d 1041, 1043-44 (D.C.Cir. 2001)("<u>Apprendi</u> does not apply to

16  enhancements under the Sentencing Guidelines when the resulting sentence remains within the

17  statutory maximum."); <u>In re</u> Sealed Case, 246 F.3d 696, 698 (D.C.Cir. 2001)(stating that

18  considering the "<u>Apprendi</u> Court's explicit endorsement" of sentence enhancements within

19  statutory limits, "it is hard to see how the Court could have intended to mandate the heightened

20  standard for application of the Guidelines' enhancement instructions when the resulting sentence

21  remains within the statutory maximum."); <u>United States v. Hernandez-Guardado</u>, 228 F.3d 1017,

22  1027 (9th Cir. 2000); <u>Simpson v. United States</u>, 376 F.3d 679, 681 (7th Cir. 2004)(stating that

23  "before <u>Blakely</u> was decided, every federal court of appeals had held that <u>Apprendi</u> did not apply

24  to guidelines calculations made within the statutory maximum.")

25           After review of the legal landscape that existed when Movant's conviction became

26  final, the Court concludes that <u>Blakely</u> announced a new rule of criminal procedure because there

27  was no binding precedent at the time Movant's conviction became final that required the court

28

1  to direct the jury to make findings, beyond a reasonable doubt, concerning the appropriate

2  sentencing guideline range, provided the resulting sentence was within the statutory maximum.

### 2. Whether <u>Blakely</u> Fits within either of the <u>Teague</u> Exceptions

4  The Court must next determine whether <u>Blakely</u> fits within an exception to the rule

5  that new rules of criminal procedural do not apply retroactively. As discussed above, retroactive

6  effect is only given to new rules of criminal procedure that: (1) place "certain kinds of primary,

7  private individual conduct beyond the power of the criminal law-making authority to prescribe,"

8  or (2) constitute "watershed rules of criminal procedure implicating the fundamental fairness and

9  accuracy of the criminal proceeding." <u>Teague</u>, 489 U.S. at 311. Here, the first exception does

10  not apply because the rule announced in <u>Blakely</u> did not place any kind of conduct beyond the

11  reach of the criminal law.

12  Second, in view of the Supreme Court's decision in <u>Summerlin</u>, 124 S.Ct. at 2523,

13  <u>Blakely</u> does not fit within the second exception because it does not constitute the type of

14  watershed rule that implicates either fundamental fairness or accuracy to such a degree to be

15  "implicit in the concept of ordered liberty." <u>Graham v. Collins</u>, 506 U.S. 461, 478 (1993). To

16  the contrary, in <u>Summerlin</u>, the Supreme Court rejected the argument that <u>Ring</u> constituted a

17  watershed rule of criminal procedure, even though <u>Ring</u>, like <u>Blakely</u>, prohibited the

18  enhancement of a sentence beyond the statutory maximum unless a jury found the facts

19  authorizing the enhancement beyond a reasonable doubt. <u>Summerlin</u>, 124 S.Ct. at 2524-26. In

20  finding that <u>Ring</u> did not constitute a watershed rule, the Court noted that the relevant issue is

21  whether judicial fact-finding so "'seriously diminishe[s]' accuracy that there is an 'impermissibly

22  large risk' of punishing conduct that the law does not reach." <u>Id.</u> at 2525 (quoting <u>Teague</u>, 489

23  U.S. at 312-313). The Court found it "implausible" that "judicial factfinding so seriously

24  diminishe[s] accuracy as to produce an impermissibly large risk of injustice." <u>Id.</u> Thus, because

25  the Supreme Court has rejected the argument that <u>Ring</u> constitutes a watershed rule of criminal

26  procedure, and because <u>Ring</u> is the immediate predecessor to <u>Blakely</u> and because its reasoning

27  is indistinguishable from <u>Blakely</u>, <u>Blakely</u> does not constitute a watershed rule of criminal

28  procedure that may be applied retroactively on collateral review. See, <u>Cook</u>, 386 F.3d at 950

1   (Blakely not retroactively applicable to case involving a successive § 2255 motion); United

2   States v. Sanchez-Cervantes, 282 F.3d 664, 671 (9th Cir. 2000)(Apprendi is not retroactively

3   applicable to § 2255 cases on collateral review).

4          Indeed  all courts that have considered the question have held that the extension of

5   the Apprendi rule announced in Blakely does not apply retroactively to cases on collateral

6   review. See, United State v. Quintero-Araujo, 343 F.Supp.2d 935, 942 (D.Idaho 2004); United

7   States v. Stoltz, 325 F.Supp.2d 982, 987 (D.Minn. 2004); Orchard v. United States, 332

8   F.Supp.2d 275, 277 (D.Me. 2004); Concepcion v. United States, 328 F.Supp.2d 372, 374

9   (E.D.N.Y. 2004); Tisdale v. United States, 2004 WL 2782725, * 7 (D.Kan. Sept. 22, 2004);

10  United States v. Stancell, 346 F.Supp.2d 204 (D. D.C. 2004).  This Court agrees with the

11  reasoning of these cases and similarly finds Blakely nonretroactive in this case where Movant's

12  conviction was final before Blakely was announced.  Because Blakely does not apply

13  retroactively to this case on collateral review, Movant's challenge to the sentencing enhancement

14  under the rule announced in Blakely fails.

15         Moreover even if Blakely applied to Movant's case, Movant's sentencing

16  enhancement would still be constitutional.  In Blakely, the Court extended the rule in Apprendi

17  to judicial fact-finding in the sentencing phase.  124 S.Ct. at 2536.  The Blakely Court's rule

18  regarding the sentencing phase does not apply to "the fact of a prior conviction" Id.  After the

19  Supreme Court decided Blakely, the Ninth Circuit, in United States v. Quintana-Quintana, 383

20  F.3d 1052 (9th Cir. 2004), confirmed that its previous decision in United States v. Pacheco-

21  Zepeda, 234 F.3d 411 (9th Cir. 2001), remains good law.   See also, United States v. Lopez-

22  Zamora, 392 F.3d 1087, 1097-98 (9th Cir. 2004); United States v. Smith, 390 F.3d 661, 667 (9th

23  Cir. 2004).  In Pacheco-Zepeda, the court held that the government need not prove beyond a

24  reasonable doubt the existence of a defendant's prior convictions in a prosecution under 8 U.S.C.

25  § 1326.  Id. at 414-415(noting that "Apprendi held that all prior convictions . . . were exempt

26  from Apprendi's general rule and, under Almendarez-Torres, may continue to be treated as

27  sentencing factors.") In Blakely, the Supreme Court specifically retained the exception for prior

28  convictions which was established in Apprendi.

In view of the foregoing, Movant did not have a Sixth Amendment right to have a jury determine the existence of his prior conviction beyond a reasonable doubt.  Moreover, Movant admitted his prior conviction in the plea agreement and during the change of plea hearing.   Accordingly, Movant's claim fails because <u>Blakely</u> does not apply retroactively on collateral review and does not apply to a sentencing enhancement based on a prior conviction.

## III.  Movant's Underlying Deportation[2]

Finally, Movant challenges his conviction for reentry after deportation on the ground that the underlying deportation proceedings violated due process because the Immigration Judge

---

[2] On May 11, 2005, the President signed into law H.R. 1268, an "Act Making Emergency Supplemental Appropriations for Defense, the Global War on Terror, and Tsunami Relief, for the fiscal year ending September 30, 2005." Pub. L. No. 109-13, 119 Stat. 231 May 11, 2005).  The REAL ID Act of 2005, formerly H.R. 418, was appended to the Supplemental Appropriations Act.

Section 106(a) of the REAL ID Act amends 8 U.S.C. § 1252 in three significant  respects: (1) it strips the district courts of habeas corpus jurisdiction under 28 U.S.C. § 2241 "or any other habeas corpus provision" to review administrative orders of removal, deportation or exclusion entered under the Immigration and Nationality Act; (2) it restores jurisdiction in the courts of appeals to review "constitutional claims or questions of law" raised in connection with a petition for review; and (3) it provides that a petition for review in the appropriate court of appeals is the exclusive means for judicial review of an administrative order of removal, deportation, or exclusion entered under the INA.

Section 106(a) of the REAL ID act explicitly provides that section 106(a) is retroactive. Section 106(a) provides that if any § 2241 habeas corpus case challenging a final order of removal, deportation, or exclusion is pending in the district court on the date of enactment, "then the district court shall transfer the case (or any part of the case that challenge the order of removal . . . ) to the appropriate court of appeals."  REAL ID Act, § 106.

Here, Movant is proceeding under 28 U.S.C. § 2255 and seeks to invalidate his criminal conviction for illegal reentry after deportation in violation of 8 U.S.C. § 1326(a).  Movant collaterally challenges his underlying deportation proceedings on due process grounds because the removal order serves as a predicate element of the crime of conviction. The Court, therefore, will consider the underlying deportation proceedings only to the extent that those proceedings form an element of the criminal offense at issue.  Even if the Court grants § 2255 relief, it is not granting Movant relief from the underlying removal order.  Should Movant seek to launch an independent attack to his removal order, he must bring such a challenge in the Ninth Circuit Court of Appeals under the REAL ID Act. See, <u>Fernanadez-Ruiz v. Gonzales</u>, 2005 WL 1301593 (9th Cir., May 31, 2005)(holding that under the REAL ID Act, the Ninth Circuit has jurisdiction to review constitutional claims and questions of law presented in petitions for review of final orders of removal, deportation, and exclusion.)

did not advise him of his right to apply for a waiver under former section 212(c) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(c).

Under the Supreme Court's holding in United States v. Mendoza-Lopez, 481 U.S. 828 (1987), in a criminal prosecution under 8 U.S.C. § 1326, the Fifth Amendment Due Process clause requires a meaningful opportunity for judicial review of the underlying deportation.  Id. at 837-38.  A defendant charged with illegal reentry under 8 U.S.C. § 1326, has a Fifth Amendment right to collaterally attack his removal order because that order serves as a predicate element of his conviction.  Id. at 837-38.  To sustain a collateral attack under § 1326(d), a defendant must demonstrate that: (1) he has exhausted all administrative remedies available to him to appeal his removal order; (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for direct judicial review of the deportation order; and (3) the deportation hearing was fundamentally unfair.  Id.  An underlying removal order is "fundamentally unfair" if "(1) [a defendant's] due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects."  United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cri. 1998).

**A.  Exhaustion**

An alien is barred from collaterally attacking his underlying removal order as a defense to § 1326 charges if "he validly waived the right to appeal that order during the deportation proceedings."  8 U.S.C. 1326(d); United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001).  The exhaustion requirement, however, "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."  Id. at 1183-84.  A waiver of the right to appeal a removal order does not comport with due process when it was not "considered and intelligent."  Id. at 1182.  A waiver of the right to appeal is not considered and intelligent when an Immigration Judge ("IJ") fails to advise an alien of his right to appeal his removal order to the Board of Immigration Appeals. ("BIA").  United States v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998).  "It is mandatory under the Due Process Clause that an IJ inform an alien of his or her ability to appeal a removal order during removal proceedings."  Unites States v. Ubaldo-Figueroa, 364 F.3d 1042, 1048 (9th

1  Cir. 2004)(citing <u>United States v. Arce-Hernandez</u>, 163 F.3d 559, 563 (9th Cir. 1998)).

2  Additionally, where "'the record contains an inference that the petitioner is eligible for relief

3  from deportation, but the IJ fails to give him the opportunity to develop the issue, [courts] do not

4  consider an alien's waiver of his right to appeal his deportation order to be considered and

5  intelligent." <u>Muro-Inclan</u>, 249 F.3d at 1182(citation omitted).  For example, in <u>United States v.</u>

6  <u>Leon-Paz</u>, 340 F.3d 1003, 1005 (9th Cir. 2003) after the IJ erroneously advised the alien that he

7  was not eligible for relief under § 212(c) of the former INA, the alien declined to appeal the IJ's

8  order of removal.  340 F.3d at 1004, 1007.  The Ninth Circuit held that the alien's due process

9  rights were violated because of the IJ's erroneous advice.  <u>Id.</u> at 1007.

10       In a Notice of Receipt of Deportation Hearing Recording, Respondent advises the

11  Court that it has received and reviewed a recording of Movant's March 13, 1995 deportation

12  proceedings.  Respondent advises the Court that Movant was advised of and declined his right

13  to seek a waiver of deportation.  (document # 42)  Because Movant was advised of his right to

14  seek a waiver of deportation and waived that right, it appears that there was not due process

15  violation.

16       However, in an abundance of caution, for purposes of Movant's § 2255 motion, the

17  Court will assume that Movant's waiver was not considered and intelligent.  Accordingly,

18  Movant is exempted from the exhaustion requirement in 8 U.S.C. § 1326(d)(1) because the Court

19  assumes for purposes of this motion that the IJ did not inform him that he could apply for relief

20  under § 212(c).  See, <u>Ubaldo-Figueroa</u>, 364 F.3d at 1049.  The requirement that the IJ inform

21  an alien of his right to apply for relief from removal is mandatory and failure to so inform the

22  alien of his eligibility for relief from removal is a denial of due process.  <u>Ubaldo-Figueroa</u>, 364

23  F.3d at 1050 (quoting <u>Muro-Inclan</u>, 249 F.3d at 1183).

24       The Court finds that although Movant did not exhaust his administrative remedies

25  by appealing his removal order to the BIA, he is exempted from the exhaustion bar because his

26  waiver of his right to appeal was not sufficiently "considered and intelligent" under the Due

27  Process Clause.

28                    **2.  Deprivation of Judicial Review**

1    To sustain a collateral attack on his removal order, Movant must also establish that
2    the "deportation proceedings at which the order was issued improperly deprived [him] of the
3    opportunity for judicial review." 8 U.S.C. § 1326(d)(2).    Although Respondent advises the
4    Court that review of the recording on the March 1995 deportation hearing reveals that Movant
5    was advised of his right to apply for waiver, in absence of the transcript of Movant's removal
6    hearing, the Court assumes that Movant was deprived judicial review.

7    **3. Prejudice**

8    The Court must next determine whether Movant was prejudiced by the due process
9    violations in the underlying removal proceedings. Ubaldo-Figueroa, 364 F.3d at 1048. To
10   establish prejudice, Movant need not show that he actually would have been granted relief under
11   § 212(c). Rather, he must only show that he had a "plausible" ground for relief from deportation
12   which involves a balancing of favorable factors against unfavorable factors. United States v.
13   Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000). Examples of favorable factors include family ties
14   to the United States, hardship that would result from deportation, military service, employment,
15   evidence of good character, and, in the case of one convicted of a crime, proof of rehabilitation.
16   Lovell v. INS, 52 F.3d 458, 461 (2d Cir. 1995). Unfavorable factors include the nature and
17   circumstances of the ground upon which the alien is being deported, the nature and seriousness
18   of Movant's criminal record, the presence of additional immigration violations, and other
19   evidence of bad character. Id.

20   Here, Movant was ordered deported based on a conviction for possessing heroin for
21   sale, a drug trafficking offense. An alien convicted of a drug trafficking offense or whose
22   criminal history otherwise shows a pattern of serious criminal activity must show "outstanding
23   equities" to be eligible for relief under INA § 212(c). Ayala-Chavev v. INS, 944 F.2d 638, 641
24   (9th Cir. 1991). Movant has a lengthy history of convictions, mostly drug-trafficking related,
25   dating back to 1982. (PSR at 19-27). Movant returned to the United States after his deportation
26   and committed another drug trafficking offense. (PSR at 29). Movant also have several arrests
27   for immigration offense. (PSR at 32-38)

28

1    In support of his claim that he would have been eligible for § 212(c) relief, Movant

2    states that he maintains a permanent residence in Yuma, Arizona and is employed in Yuma.  He

3    has a daughter, Cecilia, who was born in California in 1993.  His daughter is under the care of

4    a doctor in Yuma and attends school in Arizona or California.  He further states the he

5    "frequently visited his wife and other children in Mexico" and has "entered the United States

6    numerous times" without incident.  (document # 30)

7    Movant fails to establish that he has a plausible ground for relief from removal under

8    former § 212(c).  The record reveals that Movant is married and that his wife resides in Mexico

9    along with Movant's four other children.   Three of Movant's children who reside in Mexico are

10   adults and one is a minor under the age of fifteen who lives with his mother, Movant's wife.

11   (Respondents' Exh. B)  Movant's family ties are stronger in Mexico based on the fact that his

12   wife and "other children" reside there.  (document # 30)   Movant informs the Court that he

13   frequently visits Mexico.  He visits the United States to obtain medical care for his daughter,

14   Cecilia.  Movant does not have substantial family ties to the United States,  rather his substantial

15   family ties are in Mexico.  See, Kahn v. INS, 36 F.3d 1412, 1413 (9th Cir. 1994)(noting that

16   family ties is a weighty factor in determining whether to grant § 212(c) relief).

17   The record indicates that during the past fifteen years, Movant has worked in the

18   United States and Mexico.  (Respondents' Exh. B) At the time of his 1995 removal proceedings,

19   Movant had worked for ten to fifteen years in Hemet, California for Carlos Sanchez Gardening

20   Service or the Georgiana Ranch.   He was undependable about appearing for work when

21   scheduled.  (Id.)  From 1997-2000, Movant worked at various jobs sporadically due to illness.

22   In 2001, he worked in Tijuana, Mexico delivering milk.   In 2001 and 2002, Movant worked

23   construction jobs in San Luis, Mexico.  From 2002 to 2003, Movant worked in Yuma for Sierra

24   Pacific Manufactured Home Community.  (Respondents' Exh. B) Movant's job history which is

25   divided between the United States and Mexico does not support granting relief under former §

26   212(c).  Movant has not shown outstanding equities in this case.

27   Movant's family ties are stronger in Mexico that the United States, he has a sporadic

28   work history in the United States, and he has a long history of drug trafficking offenses.  The

Court finds that Movant does not have a plausible ground for relief from deportation. This finding is supported by Ninth Circuit case law. The Ninth Circuit has affirmed the denial of § 212(c) relief where an alien was convicted of possessing cocaine and had a prior record of traffic violations. <u>Ayala-Chavev</u>, 944 F.2d at 640. The Court found the denial of § 212(c) relief appropriate notwithstanding the fact that the alien had been present in the United States for 18 years, has a U.S. citizen daughter for whom he paid child support, and had been steadily employed as a farm worker. <u>Id.</u>

After review of the record in this matter, the Court finds that Movant fails to establish a plausible ground for § 212(c) relief. Accordingly, his challenge to the underlying deportation order fails.

Based on the foregoing,

**IT IS HEREBY RECOMMENDED** that Movant's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (document # 19) be **DENIED**.

IT IS FURTHER ORDERED that the September 14, 2005 Report and Recommendation (document # 43) is **VACATED**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have ten days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See,* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(e), Federal Rules of Civil Procedure. Thereafter, the parties have ten days within which to file a response to the objections. Failure timely to file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna- Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).

/ / /

/ / /

Failure timely to file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See*, Rule 72, Federal Rules of Civil Procedure.

DATED this 15th day of September, 2005.


Lawrence O. Anderson
United States Magistrate Judge